570 So.2d 1161 (1990)
LOUISIANA STATE BAR ASSOCIATION
v.
Charles D. JONES.
Nos. 87 B 0226, 88 B 0635.
Supreme Court of Louisiana.
December 3, 1990.
Rehearing Denied February 21, 1991.
*1162 G. Fred Ours, James Reed Barrow, for Louisiana State Bar Ass'n plaintiff-applicant.
Charles R. Jones, Jones & Murray, for Charles D. Jones defendant-respondent.

DISCIPLINARY PROCEEDING
WATSON, Justice.[1]
These are disciplinary proceedings brought by the Louisiana State Bar Association against attorney Charles D. Jones. The Louisiana Supreme Court has original jurisdiction. LSA-Const. art. V, § 5(B).
Jones is charged with seven specifications of misconduct in representing clients and five specifications of misconduct in failing to cooperate with the Committee on Professional Responsibility of the Louisiana State Bar Association. In disciplinary proceedings, the bar association has the burden of proving the alleged misconduct by clear and convincing evidence. Louisiana State Bar Association v. Dowd, 445 So.2d 723 (La.1984).

NEGLECT OF CLIENT REPRESENTATION
The seven clients involved in the complaints are Rosie Hall, Carl Edward Jackson, Edward A. Coward, Clifford Osborne, Donald Scott White, Deloris D. Wilson, and the Reverend Willie Young.
A claim was settled for Rosie Hall on December 31, 1981. The sum of $530 was placed in escrow for payment of medical bills, but the bills were not paid. The major expense, a Glenwood Hospital bill for $273, was finally paid on May 19, 1987. In 1982, the client had lost a check payable to the hospital for the same amount. Jones paid Rosie Hall $250 on September 19, 1989, and an additional $250 on April 3, 1990. Respondent Jones contends in brief that the other medical bills have also been paid. Disciplinary counsel for the Louisiana State Bar Association concedes that commingling and conversion of the Hall medical fund was not proven by clear and convincing evidence. It is undisputed that there was inexcusable delay in disbursing the funds.
Carl Edward Jackson retained Jones in July of 1986, and paid a total fee of $2,250. Jones filed a racial discrimination suit for Jackson in federal court, but the case was dismissed with prejudice because of the attorney's failure to meet pretrial requirements. There was a great potential for harm because the case might not have been reinstated. However, the suit was reinstated and the fee was eventually refunded on October 5, 1990.
On March 27, 1986, Edward A. Coward retained Jones to file an objection in connection with a consent decree submitted to the Justice Department on behalf of the Richland Parish School Board. Coward paid Jones a fee of $2,500. Coward, a school board member, attended a hearing on the decree and told fifty or sixty of his constituents, who were present, that he had filed an objection. However, Coward was advised by Jones that his objection had not been filed. Horrified, Coward could not face his constituents and left the meeting. Restitution of the $2,500 was not made until October 5, 1990.
Clifford Osborne paid Jones $1,100 in October of 1986 to represent him in a property dispute with the St. Rest Missionary Baptist Church. Jones was to file suit for Osborne against the church and later to answer a suit by the church. Neither the petition nor answer were ever filed. Restitution of the fee was not made until October 5, 1990.
Donald Scott White employed Jones to file an employment discrimination suit and paid a fee of $1,200. The suit was never filed and the fee was not refunded until January 27, 1989, two years after Jones was fired as White's attorney.
In April of 1985, Deloris D. Wilson and members of her family hired Jones to defend a lawsuit and paid him $1,550 in attorney's fees and $200 for a deposition. Attorney Jones failed to attend a pretrial *1163 conference and was discharged by the clients. He refunded the $200 in June of 1987, but the fee was not refunded until October 5, 1990.
On June 21, 1986, Jones was retained to represent the Rev. Willie Young and accepted a fee of $750 to partition some succession property. Jones failed to perform any services, ignored the committee's inquiries and eventually failed to respond to a subpoena. Restitution was not made until January 27, 1989, more than one year after Jones told the bar association he would refund the fee.
The evidence is clear and convincing that Jones violated the Rules of Professional Conduct toward seven clients as outlined above.

FAILURE TO COOPERATE WITH COMMITTEE
The Disciplinary Board alleges five specifications of misconduct by Jones in failing to cooperate with its investigations.
Three of these allegations relate to Jones' lack of response to notices sent by ordinary mail. While the failure to acknowledge several letters is suspicious, these three specifications have not been proven by clear and convincing evidence.
The other two charges relate to Jones' failure to appear at the offices of the bar association in response to subpoenas issued by this court and served on him. On both occasions he claims there was a conflict with a legislative committee meeting, although not during a legislative session. Jones apparently sent telegrams stating that he had conflicts and would not appear. This is insufficient response to Supreme Court subpoenas, and the failures to appear are serious incidents of misconduct. One who has not been relieved of a subpoena's command must appear or be held in contempt of court. Although there were no contempt proceedings, Jones has been proven guilty by clear and convincing evidence of failure to cooperate with the committee in these two instances.
Attorney Jones' misconduct occurred both before and after January 1, 1987, when new Rules of Professional Conduct replaced the former Code of Professional Responsibility. The change has no substantive effect on these proceedings. The bar association proved, by clear and convincing evidence, that Jones is guilty of client neglect, delay in refunding unearned fees and failure to cooperate with the committee, in violation of the following Rules of Professional Conduct:
Rule 1.3. Diligence
A lawyer shall act with reasonable diligence and promptness in representing a client.
Rule 1.4. Communication
(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
(b) The lawyer shall give the client sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued, to the extent the client is willing and able to do so.
Rule 1.16. Declining or terminating representation
(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.
Rule 3.2. Expediting litigation
A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client.
Rule 8.4. Misconduct
It is professional misconduct for a lawyer to:
(a) Violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
* * * * * *

*1164 (g) Except upon the expressed assertion of a constitutional privilege, to fail to cooperate with the Committee on Professional Responsibility in its investigation of alleged misconduct.
Jones concedes that he was guilty of client neglect but attributes his deficiencies to inexperience, overwork, the simultaneous dissolution of his marriage and his law firm, and the press of legislative business. Failure to cooperate with the committee's investigation is attributed to the same stresses that caused Jones to neglect his clients. Even though Jones claims to have performed some services for these clients, he has made full but belated monetary restitution. Jones alleges that he has now improved the efficiency of his office by employing an office manager, buying a computer, and engaging additional professional and paralegal assistance. Although his clients may have been unable to hire other counsel while Jones held their fees, there was no permanent harm to any of the clients.
A pattern of neglect in performing services for clients which causes potential injury generally warrants suspension. ABA Standards for Imposing Lawyer Sanctions § 4.42 (1990); Louisiana State Bar Association v. Nabonne, 539 So.2d 1207 (La.1989). The existence of any aggravating or mitigating factors is considered in the imposition of a sanction. Louisiana Supreme Court Rule XIX, § 10(C) (1990).
Failure to cooperate with a disciplinary investigation is an aggravating factor. Repeated instances of client neglect and egregious refusal to cooperate in the bar association's investigation has warranted a suspension of nine months. Louisiana State Bar Association v. Boutall, 532 So.2d 1151 (La.1988). In Boutall, as here, there was delay and potential harm but no serious injury to the clients.
Louisiana State Bar Association v. Martin, 451 So.2d 561 (La.1984), involved a similar situation. Martin, an attorney, was charged with six specifications of misconduct for failure to record or register mortgages and sales despite repeated requests from the clients who had paid fees and advanced costs in each case. Like Jones, Martin failed to cooperate with the bar association's investigation. Unlike Jones, Martin did not appear in this court, presented no mitigating circumstances, and failed to conclude the work or return the clients' monies. Martin had six prior public reprimands. Martin's failure to cooperate and history of professional misconduct justified suspension for six months.
Neglecting legal matters entrusted to him, failing to promptly return unearned fees, causing great potential harm, and failing to cooperate with the committee warrant attorney Jones' suspension from the practice of law. However, remedial measures indicate that the public and the profession are safeguarded from future problems. Jones' relative inexperience, coupled with his serious professional and marital problems, are mitigating factors. Furthermore, the only other complaint against Jones resulted in a private reprimand. Compare Louisiana State Bar Association v. Hinrichs, 495 So.2d 943 (La.1986), where there were at least sixteen prior complaints to the bar association.
Considering all of the aggravating and mitigating circumstances, a suspension of six months is appropriate for Charles D. Jones' violation of the Rules of Professional Conduct.

DECREE
For the foregoing reasons, it is ordered, adjudged and decreed that Charles D. Jones be suspended from the practice of law for a period of six months from the date of finality of this judgment. All costs are assessed to respondent.
SIX MONTHS SUSPENSION ORDERED.
NOTES
[1] Judge Thomas C. Wicker, Jr. of the Fifth Circuit Court of Appeal participated as associate justice pro tempore for Justice James L. Dennis, recused.